# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| FORRESTER ENVIRONMENTAL SERVICES, INC. and KEITH E. FORRESTER<br><br>Plaintiffs,<br><br>v.<br><br>WHEELABRATOR TECHNOLOGIES, INC.<br><br>Defendant. | Civil Action No. 1:07-cv- 404-JD |

## AMENDED COMPLAINT

The plaintiffs, Forrester Environmental Services, Inc. ("FESI") and Keith E. Forrester ("Forrester"), allege as follows:

### PARTIES AND JURISDICTION

1.      FESI is a New Hampshire corporation with its principal place of business at 78 Tracy Way, Meredith, New Hampshire 03253.

2.      Forrester is an individual residing at 78 Tracy Way, Meredith, New Hampshire 03253.

3.      The defendant, Wheelabrator Technologies, Inc. ("WTI") has its principal place of business at 4 Liberty Lane, Hampton, New Hampshire 03842.

4.      This Court possesses original jurisdiction of this action pursuant to 28 U.S.C. §1331 insofar as it arises under the laws of the United States, and 28 U.S.C. §1337 in that it arises under the U.S. Patent Statute, 35 U.S.C. §1 *et. seq*.

5. This Court possesses supplemental jurisdiction over the causes of action alleged herein arising under the laws of the State of New Hampshire and the common law of the State of New Hampshire pursuant to 28 U.S.C. §1367(a).

## FACTS COMMON TO ALL COUNTS

6. Forrester is the President of FESI, which he founded in 1992. From 1985 to 1992, Forrester worked for Wheelabrator Environmental Systems, Inc. ("WES"), WTI's predecessor, as Senior Environmental Engineer. While at WES, Forrester invented certain technology for the use of water-soluble phosphates to immobilize lead in bottom ash and shredder residues. Said technology was the subject of two patents of which Forrester was the inventor and which he assigned to WES, U.S. Patents No. 5,245,114 (the "'114 patent) and 5,430,233 (the "'233 patent").

7. Forrester left WES in 1992 after complaining to WES's management about actions taken by WES which Forrester viewed as unethical, and after writing a report to WES's management detailing various acts of wrongdoing, which WES's management destroyed.

8. Since 1992, WES/WTI has engaged in numerous actions to interfere with FESI's business and harm Forrester, including infringing on patents held by Forrester and lying to FESI's customers, which conduct for many years FESI and Forrester had to endure because they lacked the resources to litigate.

9. WTI and FESI are direct competitors in that both provide technology (chemical treatment) for the treatment of lead and other hazardous (toxic) metals found in incinerator ash, auto shredder residue, and copper wire insulation residue.

10. Both FESI and WTI have clients worldwide.

11. While at WES, Forrester oversaw contractors who were the inventors of certain technology for immobilization of lead and cadmium in incinerator ash which is the subject of a patent assigned by them to WES, U.S. Patent No. 4,737,356 (the "'356 patent").

12. The '356, '114, and '233 patents are expressly limited to the use of water soluble phosphates, which term is specifically defined therein to mean and require water solubility of about 5 grams per 100 milliliters.

13. WTI does not own any patents covering the use of insoluble phosphates for the treatment of lead in bottom ash or combined ash, auto shredder residue, or copper wire insulating residue, including but not limited to the use of calcium phosphate.

14. WTI sells a stabilization process under the name "WES-PHix®." The WES-PHix process uses a form of soluble phosphate to reduce the solubility of certain heavy metals in solid incinerator ash and shredder waste by altering the chemical composition of the waste. Forrester is the inventor of WES-PHix, covering treatment of bottom ash and shredder waste.

15. WES-PHix requires the treatment of ash or shredder waste using water soluble phosphate, especially phosphoric acid. WES-PHix does not include the use of insoluble phosphates, including but not limited to dicalcium phosphate. Dicalcium phosphate is insoluble with a water solubility of 0.02 gr/100 ml, and does not constitute a soluble phosphate under the definition used for that term in WTI's '356, '114 and '233 patents.

16. On information and belief, on or about February 19, 2001, WTI, through its agent and licensee Bio Max Environmental, granted a sublicense to Kuo-Bin Ceramic Ind. Co., Ltd of Taipei, Taiwan, also known as Kobin Environmental Enterprises Co., Ltd. ("Kobin") for the use of WES-PHix to treat incinerator bottom ash at Kobin's Taipei facility.

17. The use of WES-PHix phosphoric acid for stabilization of bottom ash caused a strong odor problem and, about 1% of the time, resulted in failure of the Toxicity Characteristic Leaching Procedure (TCLP) standard for lead at the Kobin plant.

18. In or around 2004, Kobin approached Forrester, as inventor of the WTI Bottom Ash WES-PHix and the '114 and '233 patents, and asked him to solve certain problems that had occurred when Kobin used WES-PHix to treat bottom ash. Kobin informed Forrester that neighbors and the Taiwan Environmental Protection Agency in Taipei had complained to Kobin about odor caused by the use of WES-PHix and also that WES-PHix had failed to pass the applicable TCLP tests on some occasions.

19. Forrester is the inventor of and owner of U.S. Patent No. 5,860,908 (the "'908 patent") for the use of a water insoluble stabilizing agent, including calcium phosphate, to treat ash residue. Forrester invented the '908 patent after leaving WES and forming FESI. A copy of the '908 patent is attached hereto as Exhibit 1.

20. Forrester is the inventor and owner of U.S. Patent No. 6,059,929 (the "'929 patent") covering a method for stabilizing heavy metals by contacting them with a stabilizing agent including phosphates not limited to soluble phosphates. Forrester invented the '929 patent after leaving WES and forming FESI. A copy of the '929 patent is attached hereto as Exhibit 2.

21. FESI sells chemicals and provides stabilization processes that were patented under the '908 and '929 patents under the name "FESI BOND® DRY."

22. When he was approached by Kobin, Forrester offered to develop a chemical covered by his '908 and '929 patents that would solve the problems with WES-PHix that had been identified by Kobin.

23. On August 27, 2004, FESI entered into a contract with Kobin to provide FESI-BOND® DRY stabilization chemicals for the purpose of stabilizing incinerator bottom ash.

24. Taiwan is the only country in the world that permits separate stabilization and reuse of incinerator bottom ash.

25. FESI's contract with Kobin includes all bottom ash stabilization projects in Taiwan including the Kobin facility, where bottom ash is separated from incinerator flyash, and where bottom ash requires stabilization prior to reuse as construction aggregate.

26. Kobin constitutes the entire market for FESI-BOND DCPDHP.

27. On information and belief, WTI gained actual knowledge of the Agreement and of FESI's contractual relations with Kobin in or around 2005.

28. FESI-BOND® DRY stabilization chemicals include dicalcium phosphate in powder form. DCPDHP is insoluble and is applied in a dry treatment process

29. In 2004 and 2005, as the result of research at the request of Kobin, Forrester invented a chemical called FESI-BOND DCPDHP employing dicalcium phosphate dihydrate powder specifically for use by Kobin at its Taiwan facility, and located a source for said chemical in China.

30. FESI-BOND® DRY insoluble chemicals, including FESI-BOND DCPDHP, are not covered by any of WTI's patents and are not included in WTI's WES-PHix system.

31. The Taiwan Environmental Protection Agency approved the use of FESI-BOND DCPDHP by Kobin in 2005.

32. Kobin commenced purchases of FESI-BOND DCPDHP from FESI's agent on or about December 1, 2005, and made regular purchases thereafter in the amount of approximately $60,000 per month.

33. In or around the period January - June, 2007, WTI approached Kobin and knowingly and intentionally made false statements to Kobin regarding FESI and regarding WTI's own patents and products, including (a) statements guaranteeing that DCPDHP was covered by WTI's patents, including the '114 patent, and that it was within the WES-PHix process; and (b) statements that FESI had been sued by WTI in the United States and had lost the suit.

34. WTI made such false statements to Kobin as part of the promotion of its own business for the purpose of interfering with FESI's actual and prospective contractual relations with FESI and causing Kobin to breach the Agreement.

35. On information and belief, WTI's decision to make such false statements and to interfere with FESI's contract with Kobin was made at WTI's corporate headquarters in New Hampshire.

36. In or around May, 2007, in reliance on and by reason of WTI's false statements as above alleged, Kobin terminated the Agreement between Kobin and FESI and entered into a new WES-PHix license agreement with WTI ("Second WTI Agreement").

37. On information and belief, during negotiation of the Second WTI Agreement, Kobin asked WTI if WES-PHix covered the use of dry insoluble chemicals, and WTI falsely stated that it has a patent covering the use of "any solid, liquid or chemical form of phosphate and/or lime" including the use of dry chemicals. On information and belief, WTI made such false statements to Kobin as part of the promotion of its own business for the purpose of interfering with FESI's actual and prospective contractual relations with FESI. On information and belief, WTI's decision to make such false statements and to interfere with FESI's contract with Kobin was made at WTI's corporate headquarters in New Hampshire.

Case 1:07-cv-00154-JD Document 143 Filed 04/24/08 Page 6 of 15

- 6 -

38. In or about June or July, 2007, FESI and Kobin planned to meet in Meredith, New Hampshire, for the purpose of signing a new FESI/Kobin agreement for future supply of DCPDHP. In or about June, 2007, prior to the anticipated meeting with FESI, Kobin met with WTI in Hampton, New Hampshire. Upon information and belief, at said meeting, WTI stated to Kobin that WTI patents and WES-PHis technology covered DCPDHP provided to Kobin by FESI, and that FESI had lost a lawsuit against WTI. Thereafter, Kobin cancelled its planned meeting with FESI in New Hampshire.

39. The Second WTI Agreement falsely states that WES-PHix includes "using any solid, liquid, or chemical form of phosphate and/or lime" for immobilization of metals such as lead and cadmium in solid residues.

40. Kobin terminated its business with FESI by reason of WTI's false statements and representations as above alleged.

41. Said termination has caused, and continues to cause, both loss of revenue and irreparable harm to FESI.

42. Kobin was licensed as an exclusive developer of FESI-BOND DCPDHP until FESI lost the subject contract given the false claims by WTI.

43. On information and belief, Kobin is purchasing DCPDHP from sources other than FESI, and is paying WTI or its agent royalties of approximately $1.5 million annually in connection with Kobin's purchases of DCPDHP pursuant to the Second WTI Agreement.

### COUNT I
### Violations of the Lanham Act

44. The plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 44 of the Complaint.

45. By its conduct as above alleged, WTI has willfully violated and continues to violate Sections 43(a), 44(h), and 44(i) of the Lanham Act, 50 U.S.C. §§1125(a), 1126(h), and 1126(i).

46. As a result of WTI's actions, Plaintiffs have suffered damages.

## COUNT II
### Breach of RSA, c. 358A

47. FESI incorporates by reference the allegations contained in paragraphs 1 through 44 of the Complaint.

48. WTI is engaged in trade and commerce within the meaning of RSA, c. 358A:1.

49. The actions of WTI as above alleged constitute unfair methods of competition or unfair or deceptive acts or practices in violation of RSA, c. 358A:2.

50. Said acts or practices of WTI constitute a willful or knowing violation of RSA c. 358A.

51. As a result of the actions of WTI as above alleged, Plaintiffs have suffered damages.

## COUNT III
### Tortious Interference with Contractual Relationship

52. FESI incorporates by reference the allegations contained in paragraphs 1 through 44 of the Complaint.

53. WTI had actual knowledge of FESI's contractual relationship with Kobin.

54. The conduct of WTI as above alleged is the result of an improper motive on behalf of WTI.

55. By its acts as above alleged, WTI tortiously interfered with the business relationship between FESI and Kobin.

56. As a result of the actions of WTI as above alleged, Plaintiffs have suffered damages.

## COUNT IV
### Tortious Interference with FESI's Prospective Advantage

57. FESI incorporates by reference the allegations contained in paragraphs 1 through 44 of the Complaint.

58. FESI possessed a business relationship or expectancy with Kobin, with a reasonable probability of future economic benefit.

59. WTI had actual knowledge of FESI's business relationship with Kobin and of FESI's expectancy of future economic benefit.

60. Except for the conduct of WTI as above alleged, FESI would have continued its business relationship and entered into an expanded business relationship with Kobin.

61. WTI intentionally interfered with FESI's prospective economic relationship with Kobin.

62. FESI has suffered and continues to suffer economic damage as a result of WTI's wrongful interference.

## COUNT V
### Patent Infringement – '908 Patent

63. Forrester incorporates by reference the allegations contained in paragraphs 1 through 44 of the Complaint.

64. On information and belief, WTI has practiced and sold and/or licensed to its customers a method for immobilizing heavy metal in a free flowing dry or wet waste (including incinerator combined ash, flyash, bottom ash, auto shredder residue and copper wire shredder

residue) including contacting the waste with a water insoluble immobilizing agent consisting of calcium phosphate or triple superphosphate.

65. On information and belief, WTI's licensees and/or customers have practiced said method and thereby infringed Forrester's '908 patent.

66. By its conduct as above alleged in paragraph 64, WTI has infringed and continues to infringe Forrester's '908 patent.

67. By its conduct as above alleged, WTI has actively induced the infringement of the '908 patent by WTI's customers and/or licensees

68. Upon information and belief, said infringement of Forrester's '908 patent and said induced infringement thereof have been and continue to be willful, wanton and deliberate, and carried out with full knowledge and awareness of Forrester's patent rights and without license from Forrester.

69. As a result of the infringing conduct of WTI, Forrester has suffered and will continue to suffer damages.

70. Said infringement has caused and will continue to cause irreparable harm to Forrester, unless such infringement is enjoined by this Court.

**COUNT VI**
**Patent Infringement – '929 Patent**

71. Forrester incorporates by reference the allegations contained in paragraphs 1 through 44 of the Complaint.

72. On information and belief, WTI has practiced and sold and/or licensed to its customers a method for stabilizing heavy metal containing material in incinerator combined ash, auto shredder residue and copper wire shredder residue employing the contacting of said heavy

metal containing material with stabilizers including triple super phosphate or calcium phosphate while processing said material through waste stream equipment prior to the generation of waste.

73. On information and belief, WTI's licensees and/or customers have practiced said method and thereby infringed Forrester's '929 patent.

74. By its conduct as above alleged in paragraph 72, WTI has infringed and continues to infringe Forrester's '929 patent.

75. By its conduct as above alleged, WTI has actively induced the infringement of the '929 patent by WTI's customers and/or licensees.

76. Upon information and belief, said infringement of Forrester's '929 patent and said induced infringement thereof have been and continue to be willful, wanton and deliberate, and carried out with full knowledge and awareness of Forrester's patent rights and without license from Forrester.

77. As a result of the unlawful conduct of WTI, Forrester has suffered and will continue to suffer damages.

78. Said infringement has caused and will continue to cause irreparable harm to Forrester, unless such infringement is enjoined by this Court.

## COUNT VII
### Patent Infringement – U.S. Patent Nos. 5,536,899; 5,722,928; and 5,846,178

79. Forrester incorporates by reference the allegations contained in paragraphs 1 through 44 of this Complaint.

80. Forester is the inventor and owner of United States Patent Nos. 5,536,899; 7,772,928; and 5,846,178 for Stabilization of Lead Bearing Waste (the "'899," "'928", and "'178 patents). The '928 patent is a continuation-in-part of the '899 patent, and the '178 patent is a

continuation of the '928 patent. Copies of the '899, '928, and '178 patents are attached hereto, respectively, as Exhibits 3-5.

81. On information and belief, WTI has practiced and sold and/or licensed to its customers a method for reducing the leaching of lead from a lead bearing waste comprising incinerator ash, copper wire shredder residue and auto shredder fluff consisting of contacting said waste with triple super phosphate or wet-process phosphoric acid.

82. On information and belief, WTI's licensees and/or customers have practiced said method and thereby infringed Forrester's '899, '928 and '178 patents.

83. By its conduct as above alleged in paragraph 73, WTI has infringed and continues to infringe Forrester's '899, '928 and '178 patents.

84. By its conduct as above alleged, WTI has actively induced the infringement of the '899, '928 and '178 patents by WTI's customers and/or licensees.

85. Upon information and belief, said infringement of Forrester's '899, '928 and '178 patents and said induced infringement thereof has been and continues to be willful, wanton and deliberate, and carried out with full knowledge and awareness of Forrester's patent rights and without license from Forrester.

86. As a result of the unlawful conduct of WTI, Forrester has suffered and will continue to suffer damages.

87. Said infringement has caused and will continue to cause irreparable harm to Forrester, unless such infringement is enjoined by this Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff FESI respectfully requests that this Court:

- 12 -

  A. Preliminarily and, after trial, permanently enjoin WTI, its agents, employees and all persons and organizations in privity, or acting in concert therewith, from (1) representing to Kobin that DCPDHP and other insoluble phosphates are covered by WTI's patents and included within WTI's WES-PHix system; (2) selling or receiving royalties by reason of the sale of DCPDHP or any insoluble phosphate or triple superphosphate to Kobin; and (3) further interfering with the actual and prospective contractual relationships between FESI and Kobin;

  B. Affirmatively require WTI, its agents, employees and all persons and organizations in privity, or acting in concert therewith, to retract any and all previous false and misleading statements to Kobin as above alleged;

  C. Award FESI its actual damages;

  D. Award FESI treble and/or enhanced damages, attorneys fees and costs, as provided by Section 35(a) and (b) of the Lanham Act, 15 U.S.C. §§1117(a) and (b), and by New Hampshire RSA Chapter 35A-A:10;

  E. Order WTI to disgorge its profits gained in violation of New Hampshire RSA Chapter 35A-A:10; and

  F. Permanently enjoin WTI from unlawful acts pursuant to New Hampshire RSA Chapter 35A-A:10.

  Plaintiff Forrester further respectfully requests that the Court:

  A. Enter judgment in favor of Forrester that WTI has directly infringed the '908, '929, '899, '928, and '178 patents and induced the infringement thereof;

  B. Preliminary, and, after trial, permanently enjoin WTI, its agents, employees, and all persons and organizations in privity or acting in concert therewith, from continued direct and induced infringement of the '908, '929, '899, '928, and '178 patents;

C.	Award Forrester compensatory damages in a sum to be determined at trial for each infringement of the '908, '929, '899, '928, and '178 patents, pursuant to 35 U.S.C. §284;

D.	Award Forrester increased damages to the maximum to three times the compensatory damages under 35 U.S.C. §284;

E.	Declare this to be an exceptional case, and award Forrester his reasonable attorneys fees pursuant to 35 U.S.C. §285; and

F.	Award Forrester his costs of this lawsuit;

## JURY TRIAL DEMAND

The plaintiffs demand a trial by jury on all issues so triable.

FORRESTER ENVIRONMENTAL SERVICES, INC.

By its attorneys,

Dated: April 4, 2008

/s/ Michael R. Callahan
Michael R. Callahan
Bar No. 424
Gallagher, Callahan & Gartrell, PC
214 N. Main Street
Concord, NH 03302-1415
603-228-1181
callahan@gcglaw.com

Of Counsel:

Sibley P. Reppert
Michael J. Markoff
Lahive & Cockfield, LLP
One Post Office Square
Boston, MA 02109
(617-994-0830)
Fax 617-742-4214
spr@lahive.com

CERTIFICATE OF SERVICE

    I hereby certify that the foregoing Amended Complaint was electronically served upon Steven E. Grill, Esquire, Devine, Millimet & Branch, 111 Amherst St., Manchester, NH 03101.

Dated: April 4, 2008                                           /s/ Michael R. Callahan
                                                                                   Michael R. Callahan