UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
FORRESTER ENVIRONMENTAL
SERVICES, INC. et al.                                            :

                  Plaintiffs,           :       CASE NO. 10-CV-154-JL

vs.                                                              :

WHEELABRATOR TECHNOLOGIES INC.,  :

                  Defendant             :

## PLAINTIFFS' OBJECTION TO DEFENDANT'S MOTION
## TO DISMISS COUNT IV

The motion to dismiss of defendant Wheelabrator Technologies, Inc. ("WTI") motion must be denied, because Plaintiffs have pleaded sufficient facts in their Amended Petition to state the claim for misappropriation they assert in Count IV of the Amended Petition.

Contrary to WTI's argument, Plaintiffs do not seek in Count IV to enforce any rights under U.S. patents. Count IV asserts solely a misappropriation claim. Patent infringement and misappropriation are very different torts, with very different elements, and WTI errs by conflating them.

WTI bases its motion solely on the argument that, even though federal patent law provides no extraterritorial protections, WTI Memo at 6-7, federal patent law nonetheless preempts Plaintiffs' misappropriation claim, *id* . at 7-9. This argument is wrong, and indeed makes no sense. WTI cites no case law, and Plaintiffs have found none, holding that a claim of misappropriation by one New Hampshire entity against another cannot be

based on extraterritorial misconduct.  Nor does WTI cite any law holding that such extraterritorial application of state law can be preempted by federal patent law that, as WTI admits, does not apply extraterritorially.  Federal patent law does not bar Plaintiffs' Count IV, because there can be no conflict between inapplicable federal patent law and the state law under which Plaintiffs' misappropriation claim arises.  Therefore, no argument can be made that U.S patent law preempts state law as to the misappropriation alleged in Count IV.

## I.   PERTINENT FACTUAL ALLEGATIONS

In 2001, through its agent and licensee Bio-Max Environmental Engineering Co., Ltd., WTI granted a sublicense to WTI to treat incinerator ash at Kobin's Taiwan facility using WTI's "WES-PHix®" process.  (Amd. Pet. at ¶17).  WES-Phix was invented by Plaintiff Keith Forrester ("Forrester"), who invented two of the three WTI U.S. patents.  (*Id.* at ¶s7, 12-17). The WES-PHix process is a wet process that uses and is limited to water soluble phosphates, specifically phosphoric acid, as expressly defined in the WTI patents to mean and require water solubility of at least 5 grams per 100 milliliters.  It does not cover or include the use of water insoluble phosphates.  (*Id*. at ¶s13-16)

Kobin experienced problems with WES-Phix, and approached Forrester, as the inventor of WES-Phix and two of the three WTI patents, and asked him to solve the problems.  (*Id*. at ¶19)

In 2004 and 2005, as the result of pioneering research at the labs of Plaintiff Forrester Environmental Services, Inc. ("FESI") to produce a dry stabilizer capsule capable of stabilizing Bottom Ash TCLP Pb while reducing odor as compared to WES-PHix® phosphoric acid stabilization, Forrester invented a chemical called FESI-BOND®

DCPDHP employing dicalcium phosphate dihydrate powder specifically engineered for use by Kobin at its Taiwan facility. (Id at ¶ 29) The FESI-BOND® DRY stabilization chemicals include calcium phosphate, monocalcium phosphate, dicalcium phosphate, tricalcium phosphate, GTSP and dicalcium phosphate dihydrate in powder form. All are water insoluble and are applied in a dry treatment process. (*Id*. at ¶ 32) The FESI-BOND® DRY water insoluble chemicals are not covered by any of WTI's patents and are not included in WTI's WES-PHix® system. (*Id*. at ¶33)

On August 27, 2004, Kobin contracted with FESI to purchase FESI-BOND® DRY stabilization chemicals for the purpose of stabilizing incinerator bottom ash. Kobin commenced purchases of DCPDHP from FESI on April 29, 2005 in the amount of approximately $60,000 per month. (*Id*. at ¶35)

In or around June, 2007, WTI approached Kobin and knowingly and intentionally made false statements to Kobin regarding, inter alia, WTI's own patents and products, including statements guaranteeing that calcium phosphate, monocalcium phosphate, dicalcium phosphate, tricalcium phosphate GTSP and DCPDHP were covered by WTI's patents and were within the WES-PHix® process. (*Id*. at ¶ 36)

In or around June, 2007, WTI explicitly required Kobin to terminate the FESI-Kobin Agreement and also required Kobin to stop all purchases and sales of FESI-BOND in Taiwan, as part of the terms and conditions of a new Kobin 2007 WES-PHix license agreement. (*Id*. at ¶ 39)

In or around June, 2007, in reliance on and by reason of WTI's false statements as above alleged, Kobin terminated the Agreement between Kobin and FESI, elected not to pay Forrester any royalty for the calcium phosphate, monocalcium phosphate, dicalcium

phosphate, tricalcium phosphate, GTSP and/or DCPDHP stabilization and odor control agent invention, and entered into a new WES-PHix® license agreement with WTI ("Second WTI Agreement"). (*Id*. at ¶ 40)

Plaintiffs believe that, during negotiation of the Second WTI Agreement (i.e., in or around June 2007), WTI falsely stated to Kobin that it had a patent covering the use of "any solid, liquid or chemical form of phosphate and/or lime" including the use of dry chemicals. (*Id*. at ¶ 41)   In or about June, 2007, Kobin met with WTI in Hampton, New Hampshire. Plaintiffs believe that, at this meeting, WTI stated to Kobin that WTI patents and WES PHix® technology covered DCPDHP provided to Kobin by FESI and the Forrester invention.  (*Id*. at ¶ 42)

Plaintiffs believe that Kobin is directly purchasing calcium phosphate, monocalcium phosphate, dicalcium phosphate, tricalcium phosphate, GTSP and/or DCPDHP from sources other than FESI, and is paying WTI or its agent royalties in connection with Kobin's purchases pursuant to the Second WTI Agreement; and that Kobin has paid WTI or its agents royalties in connection with Kobin's prior purchases of DCPDHP from FESI, on the claims by WTI that DCPDHP was covered under WTI's patents. (*Id*. at ¶ 46)

Kobin's extraterritorial practice of the Plaintiffs' method is not protected by U.S. patent law, or by traditional common law theories of unfair competition.  (*Id*. at ¶ 90)  As a result of its actions, as alleged, WTI misappropriated, at little or no cost, Forrester's commercially valuable methods. (*Id*. at ¶ 91)  Plaintiffs have suffered and continue to suffer economic damage as a result of WTI's misappropriation.  (*Id*. at ¶ 92)

**ARGUMENT**

A. **THE AMENDED PETITION STATES A CLAIM FOR MISAPPROPRIATION IN COUNT IV**

WTI's selective recitation of the allegations from Plaintiffs' Amended Petition ignores that Plaintiffs have fully pleaded facts sufficient to establish all of the elements of their claim for misappropriation. (WTI Memo. at pp. 4-5) As a result, there is no basis for dismissing Plaintiffs' misappropriation claim pursuant to Fed. R. Civ. P. 12(b)(6), and WTI's motion should be denied.

Plaintiffs' claim requires proof that WTI misappropriated Plaintiffs' valuable commercial processes at little cost, and that Plaintiffs' processes are not protected by federal patent or copyright legislation, or by one of the traditional common law theories of unfair competition. *See Mueller Co. and Mueller Int'l, Inc. v. U.S. Pipe & Foundry Co.*, 2003 U.S. Dist. LEXIS 17448 at *7 (D.N.H. Oct. 2, 2003) (quoting 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 10:47 (4th ed. 2003)). Although no New Hampshire case sets forth the elements for a common law misappropriation claim, other courts have identified those elements as follows: (1) the plaintiff has invested substantial time and money in development of its "property"; (2) the defendant has appropriated "the property" at little or no cost; and (3) the plaintiff has been injured by the defendant's conduct. *See, e.g.*, *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1169, n.13 (9th Cir. 1998) (*quoting Balboa Ins. Co. v. Trans Global Equities*, 218 Cal. App. 3d 1327, 1342, 267 Cal. Rptr. 787 (Cal. Ct. App. 1990)); *Riordan v. H.J. Heinz Co.*, 2009 U.S. Dist. LEXIS 114165 at *31 (W.D. Pa. Dec. 8, 2009). As shown above, Plaintiffs have alleged facts sufficient to establish all of these elements.

To summarize the facts as pleaded, Plaintiffs developed a new method of treating Kobin's incinerator ash using insoluble phosphates[1], specifically the FESI-BOND® DRY chemicals calcium phosphate, monocalcium phosphate, dicalcium phosphate, tricalcium phosphate, granular triple super phosphate (GTSP), and dicalcium phosphate dihydrate powder (DCPDHP).  This development required two years of work and involved pioneering research at FESI's lab.  Thus, Plaintiffs satisfy the element of misappropriation requiring that they invested substantial time and money in developing their new process.  Likewise, the Amended Petition alleges that WTI wrongfully and falsely stated – indeed, guaranteed -- to Kobin that Plaintiff's new process was within the scope of WTI's patents and its WES-PHix process, and took Plaintiff's process as their own.  As a result,  Kobin stopped buying DCPDHP and from Plaintiffs and instead bought FESI-BOND® DRY chemicals from another source and used them to process incinerator ash, meanwhile paying WTI royalties for treatment of the ash using Plaintiff's technology.  As a result, Plaintiffs lost sales of approximately $60,000 per month and lost royalties that should have been paid by Kobin to Plaintiffs rather than to WTI.  The Amended Petition thus pleads damage to Plaintiffs.

The Amended Petition further alleges that Kobin's facility is in Taiwan, and that Plaintiffs' process was wrongfully taken and used there.  Since the wrongful conduct occurred in Taiwan, it is necessarily outside the reach of U.S. patent laws.  *See, e.g., Pellegrini v. Analog Devices, Inc.*, 375 F.3d 1113, 1117 (Fed. Cir. 2004).  Likewise, it is not protected by one of the traditional common law theories of unfair competition. Those traditional common law theories involve consumer deception.  See, e.g., *Open Software*

---

[1] WTI's WES-Phix  process, based on previous patents of Keith Forrester, requires the use of soluble phosphates.

6

*Foundation, Inc., and Hewlett Packard Co.*, 307 F.3d 11, 17(1st Cir. 2002) ("It is settled in Massachusetts that 'the gravamen of an unfair competition claim is the likelihood of consumer confusion as to the source of the goods or services.'") (citation and quotation omitted); *Pacamor Bearings, Inc., et al v. Minebea Co., Ltd.*, 918 F. Supp. 491, 500 (D.N.H. 1996) ("[C]ommon law unfair competition "'is a broad equitable doctrine that has evolved in response to predatory business practices and is designed to enforce 'increasingly higher standards of fairness or commercial morality in trade.'"") (citation and quotation omitted); *id.* at 501 ("[L]egislative enactment of consumer protection statutes such as RSA 358-A are recognized as providing supplemental, rather than exclusive, remedies to 'liability at common law for acts of unfair competition . . . .'") (citation and quotation omitted); *Optical Alignment Systems and Inspection Services, Inc. v. Alignment Services of North America, Inc.*, 909 F. Supp. 58, 61-62 (D.N.H. 1995) ("Although the New Hampshire Supreme Court has not defined the exact contours of common-law unfair competition, New Hampshire law does provide that 'a person is liable for unfair competition if he engages in conduct which deceives the general buying public.' As long as a party does not mislead or confuse the public as to the source of its product, it may refer to a competitor's trademark without competing unfairly.") (citation and quotation omitted). In contrast, the doctrine of misappropriation originated from a 1918 Supreme Court case[2], and involves the taking of another's property. As summarized above, the conduct of WTI as alleged in the Amended Petition involves the intentional taking by WTI of the process for treating Kobin's ash developed by Plaintiffs.

Plaintiffs have thus stated a claim for misappropriation, and WTI's motion to dismiss must be denied.

---

[2] *International News Service v. Associated Press*, 248 U.S. 215 (1918).

### B. NEW HAMPSHIRE MISAPPROPRIATION LAW IS NOT PREEMPTED BY FEDERAL PATENT LAW, BECAUSE THERE IS NO CONFLICT BETWEEN THESE LAWS

"Article I, § 8, cl. 8, of the Constitution gives Congress the power '[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries.'" *Bonito Boats, Inc v. Thunder Craft Boats, Inc,* 489 U.S. 141, 146, 109 S.Ct. 971, 103 L.Ed.2d 118 (1989). "The federal patent system thus embodies a carefully crafted bargain for encouraging the creation and disclosure of new, useful, and nonobvious advances in technology and design in return for the exclusive right to practice the invention for a period of years." *Id.*, 489 U.S. at 151-152. "[O]ur past decisions have made clear that state regulation of intellectual property must yield to the extent that it clashes with the balance struck by Congress in our patent laws." *Id*, 489 U.S. at 152. 'State law is not displaced merely because the contract relates to intellectual property which may or may not be patentable; the states are free to regulate the use of such intellectual property in any manner not inconsistent with federal law. In this as in other fields, the question of whether federal law pre-empts state law 'involves a consideration of whether that law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' **If it does not, state law governs**." *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262, 99 S.Ct. 1096, 59 L.Ed. 2nd 296 (1979)(citations omitted)(emphasis added).

Thus, under *Aronson*, state patent law is pre-empted only to the extent that it conflicts with federal law. WTI concedes that federal patent law provides no extraterritorial protection for U.S. patents and even notes that "inventors are well-advised

8

to seek patent protection in every territory in which their invention might be used." WTI Memo at 7.   Thus, WTI impliedly acknowledges that federal patent law does not conflict with non-federal sources of law which do apply extraterritorially.   Nonetheless, WTI asserts that the individual states cannot be the source of law applying extraterritorially to conduct that would have been preempted by federal patent law had the conduct occurred in the United States.   However, WTI does not cite a single authority holding that the extraterritorial application of state law can be barred by inapplicable federal patent law. Such an argument would make no sense, because it would in effect deprive a U.S. plaintiff of the opportunity to obtain relief under state law for tortious misconduct by a fellow citizen merely because that conduct occurred abroad.

There is no federal barrier to New Hampshire applying its own law to its own citizens.   "The proposition is 'fairly well established that a state may regulate its residents, even when they are acting outside of the state.'" *Instructional Systems, Inc. v. Computer Curriculum Corp.*, 130 N.J. 324, 370, 614 A.2d 124 (N.J., 1992)(*citing Skiriotes v. Florida,* 313 U.S. 69, 61 S.Ct. 924, 85 L.Ed. 1193 (1941).   As Forrester noted in its Reply to WTI's Opposition to Forrester's Motion to Remand, whether New Hampshire or Taiwanese law applies in this case will need to be resolved, *see Mayo v. Hartford Life Ins. Co.*, 220 F.Supp.2d 714, 744 (S.D. Tex., 2002) ("It is common that, in matters a state has authority to regulate, the state's courts consistently will apply that state's law to disputes involving its citizens").  Accord,  *Pearson v. Northeast Airlines Inc.*, 309 F.2d 553, 559 (2d Cir.1962); *see Caton v. Leach Corp.*, 896 F.2d 939, 943 (5th Cir.1990); *Stobaugh v. Norwegian Cruise Line Ltd.*, 5 S.W.3d 232 (Tex.App. — Houston [14th Dist.] 1999) (*citing Caton*)).  If Taiwanese law is applied, there obviously will be no conflict between New Hampshire and federal law.

WTI relies on *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225 (1964) and *Compco Corp. v. Day-Bright Lighting, Inc.*, 376 U.S. 234 (1964), neither of which

9

involved extraterritorial application of any law, for the proposition that "federal [patent] law thus completely preempts state law" in regard to "the extent of protection afforded to a holder of a patent issued by the United States." WTI Memo at 7.  As noted above, the Plaintiffs' present claims are not based on any patents issued by the United States or upon conduct in the United States.   Moreover, the *Sears, Roebuck* Court expressly cautioned only that in regard to federal patent law, a state "cannot…give protection of a kind that **clashes** with the objectives of the federal patent laws."   376 U.S. at 231 (emphasis added).   Thus, both *Sears, Roebuck* and *Compco* (both decided the same day in 1964) are consistent with the teaching of *Aronson* and *Bonito* that state law controls in the absence of an actual conflict between the state law and federal patent law.[3]

Thus, WTI's position is both without support and without merit.  Federal patent law is not intended to apply extraterritorially but also is not intended to preclude other sources of law from applying extraterritorially.  Under *Aronson*, in the absence of a conflict between the purposes of federal patent law and the state law at issue, the state law governs.

### C.     PLAINTIFFS DO NOT SEEK TO ENFORCE FORRESTER'S PATENTS EXTRATERRITORIALLY AGAINST WTI

WTI  bases its motion on the argument that  "federal patent law does not provide protection in other countries, and since federal patent law fully preempts state law in the area of patent protection, the patent rights Forrester claims to own cannot be enforced through any theory grounded in state law – whether misappropriation, unfair competition, or otherwise." (WTI Memo. at 3) (emphasis added).  While this statement is true as to

---

[3] The Court in *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 519, 527 (1972), on which WTI also relies for its "extraterritorial" argument, WTI Memo at 8, noted that "it is not an infringement to make or use a patented product outside of the United States" but did not address the issue of whether state law applies to extraterritorial usage.

suits in the United States, WTI cites no case law support for it as to claims regarding conduct abroad that are expressly not claims for patent infringement. As is clear from the Amended Petition, Plaintiffs do not seek to enforce their patent rights in this action against WTI. Plaintiffs do not allege any claim of patent infringement against WTI, whether actual or hypothetical. While Plaintffs do allege hypothetically that Kobin's use of Plaintiffs' method, if it occurred in the United States, would infringe six Forrester patents (Amd. Pet. At 77, 81, 89), they make no allegation that the conduct of WTI would have constituted patent infringement in the United States had it occurred there. Rather, Plaintiffs allege that WTI misappropriated Plaintiffs' method for treating Kobin's incinerator ash by telling Kobin falsely that it was within the scope of WTI's patents and its WES-PHix process. Even as to Kobin, Plainitffs assert no claim of patent infringement, and indeed they allege that they could not do so because the conduct at issue occurred abroad. (Amd. Pet. at ¶s 78, 28, 90).

### D.  MISAPPROPRIATION IS DISTINCT FROM PATENT INFRINGEMENT

The rights that Plaintiffs seek to enforce in Count IV of the Amended Petition are separate and distinct from whatever rights they have under Forrester's US patents. WTI errs by equating misrepresentation with patent infringement. These two torts are very different. Unlike patent infringement, misappropriation is an intentional tort. Unlike patent infringement, misappropriation requires proof that plaintiff possesses a valuable proprietary commercial process. Patent infringement requires a valid and enforceable patent, but misappropriation does not. Patent infringement requires that each element of an asserted patent claim be present in the accused device or method, but there is no

11

Case 1:10-cv-00154-JL Document 22 Filed 12/09/10 Page 12 of 14

requirement in the law of misappropriation that the entire invention or method must be misappropriated.

### D. WTI'S RULE 11 MOTION IS IMPROPER

Finally, WTI's two-paragraph Rule 11 motion is an improper ploy to bolster its flawed motion to dismiss. (WTI Memo. at p. 9) Indeed, WTI's invocation of Rule 11 itself violates the plain language of the Rule, and should be disregarded by the Court.

The mechanism for a sanctions motion under Rule 11 is clear:

> A motion for sanctions **must be made separately from any other motion** and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it **must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service** or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

(Fed. R. Civ. P. 11(c)(2); emphasis added)

Here, obviously, WTI's Rule 11 motion is not "made separately from any other motion," as required. Further, WTI does not even allege that it served its Rule 11 motion on Plaintiffs at least 21 days before filing it as part of the motion to dismiss.

WTI should not be permitted to preview a Rule 11 motion against Plaintiffs, in violation of the plain language of Rule 11, itself. In any case, as set forth above, Plaintiffs' misappropriation claim is not a new claim for relief, but is recognized and warranted by existing law. WTI's baseless attempt to make Plaintiffs' colorable misappropriation claim the subject of Rule 11 sanctions, should, in turn, subject WTI to sanctions. See 1993 Advisory Comm. Notes to Rule 11 (observing that filing of a frivolous Rule 11 motion "is itself subject to the requirements of the rule and can lead to sanctions").

12

## **CONCLUSION**

For the foregoing reasons, WTI's motion to dismiss Plaintiff's Count IV, pursuant to Fed. R. Civ. P. 12(b)(6), should be denied. In addition, WTI's improper motion for sanctions pursuant to Fed. R. Civ. P. 11 should be disregarded.

Dated: December 9, 2010        Respectfully submitted,

                                                 GALLAGHER, CALLAHAN & GARTRELL, PC

                                                     Michael R. Callahan (Bar No. 424)
                                                     Erik G. Moskowitz (Bar No. 18961)
                                                     214 N. Main Street
                                                     Concord, NH 03302-1415
                                                     603-228-1181
                                                     callahan@gcglaw.com
                                                     moskowitz@gcglaw.com

                                                     OF COUNSEL:

                                                     */s/ Sibley P. Reppert*
                                                     Sibley P. Reppert
                                                     Michael J. Markoff
                                                     Pearl Cohen Zedek Latzer LLP
                                                     50 Congress Street, Suite 1010
                                                     Boston, MA 02109
                                                     (617) 228-5725
                                                     (617) 228-5721 fax
                                                     SibleyR@pczlaw.com
                                                     mmarkoff@verizon.net

                                                     Clyde A. Shuman
                                                     Pearl Cohen Zedek Latzer LLP
                                                     1500 Broadway, 12th Floor
                                                     New York, NY 10036
                                                     (646) 878-0800
                                                     Fax (646) 878-0801
                                                     ClydeS@pczlaw.com

                                                     Attorney for Plaintiffs Forrester
                                                     Environmental Services, Inc. and
                                                     Keith E. Forrester

## **CERTIFICATE OF SERVICE**

I, Sibley P. Reppert, hereby certify that a copy of the foregoing was delivered to the Court's ECF system for service on all counsel of record this 9th day of December, 2010.

Dated:  December 9, 2010					By:  /s/ Sibley P. Reppert
								Sibley P. Reppert