IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| FORRESTER ENVIRONMENTAL SERVICES, INC. and KEITH E. FORRESTER<br><br>Plaintiffs,<br><br>v.<br><br>WHEELABRATOR TECHNOLOGIES, INC.<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 1:10-cv-00154-JL<br>)<br>)<br>)<br>)<br>)<br>) |

## SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff Forrester Environmental Services, Inc. ("FESI") and Keith E. Forrester ("Forrester"), as and for their Second Amended Complaint against Defendant Wheelabrator Technologies, Inc. ("WTI"), allege as follows:

### NATURE OF THE ACTION

1. This is a civil action for recovery of damages and injunctive relief, arising from WTI's tortious interference with FESI's contractual relations and prospective advantage, and violated NH RSA 358-A:2 and RSA 350-B.

### PARTIES AND JURISDICTION

2. Plaintiff FESI is a New Hampshire corporation with its principal place of business at 78 Tracy Way, Meredith, New Hampshire 03253.

3. Plaintiff Forrester is an individual residing at 78 Tracy Way, Meredith, New Hampshire 03253.

4. On information and belief, defendant, Wheelabrator Technologies, Inc. ("WTI") has its principal place of business at 4 Liberty Lane, Hampton, New Hampshire 03842.

## JURISDICTION AND VENUE

5. On information and belief, this Court has personal jurisdiction over Defendant WTI, in that WTI has its principal place of business in the State of New Hampshire, and conducts business in the State of New Hampshire.

6. Venue is proper based on the domicile/business addresses of the parties.

## FACTS COMMON TO ALL COUNTS

7. Keith E. Forrester ("Forrester") is the President of FESI, which he founded in 1992. From 1985 to 1992, Forrester worked for Wheelabrator Environmental Systems, Inc. ("WES"), WTI's predecessor, as Senior Environmental Engineer. While at WES, Forrester invented certain technology for the use of water-soluble phosphates to immobilize lead in bottom ash and shredder residues. Said technology was the subject of two United States Patents, of which Forrester was the inventor and which he assigned to WES, U.S. Patents No. 5,245,114 ("the '114 Patent) and 5,430,233 ("the '233 Patent").

8. Forrester left WES in 1992 after complaining to WES's management about actions taken by WES which Forrester viewed as unethical, and after writing a report to WES's management detailing various acts of wrongdoing, which WES's management destroyed.

9. Since 1992, WES/WTI has engaged in numerous actions to interfere with FESI's business and harm Forrester, including infringing on patents held by Forrester and lying to FESI's customers, which conduct for many years FESI and Forrester had to endure because they lacked the resources to litigate.

10. WTI and FESI are direct competitors in that both provide technology (chemical treatment) for the treatment of lead and other hazardous (toxic) metals found in incinerator ash, auto shredder residue, and copper wire insulation residue.

11. Both FESI and WTI have clients worldwide.

12. While at WES, Forrester oversaw contractors who were the inventors of certain technology for immobilization of lead and cadmium in incinerator ash which is the subject of a United States Patent assigned by them to WES, U.S. Patent No. 4,737,356 ("the"'356 Patent"), which is now in the public domain since the patent term ended in 2008.

13. The '356, '114, and '233 Patents are expressly limited to the use of water soluble phosphates, which term is specifically defined therein to mean and require water solubility of at least to the extent of about 5 grams per 100 milliliters.

14. WTI does not own any patents covering the use of water insoluble phosphates for the treatment of lead in bottom ash, flyash or combined ash, auto shredder residue, or copper wire insulating residue, including but not limited to the use of calcium phosphate, monocalcium phosphate, dicalcium phosphate, tricalcium phosphate, granular triple superphosphate or dicalcium phosphate dihydrate powder.

15. WTI sells a stabilization process under the name "WES-PHix®." The WES-PHix® process uses a form of water soluble phosphate to reduce the solubility of certain heavy metals in solid incinerator ash and shredder waste by altering the chemical composition of the waste. Forrester is the inventor of WES-PHix®, covering treatment of incinerator bottom ash and auto and wire shredder waste.

16. WES-PHix® requires the treatment of ash or shredder waste using water soluble phosphate, especially phosphoric acid. WES-PHix® does not include the use of water insoluble

phosphates, including but not limited to calcium phosphates, monocalcium phosphates, dicalcium phosphates, tricalcium phosphates, granular triple superphosphate and dicalcium phosphate dihydrate powder. Dicalcium phosphate dihydrate powder ("DCPDHP") is water insoluble with a water solubility of 0.02 gr/100 ml, and does not constitute a water soluble phosphate under the definition used for that term in WTI's '356, '114 and '233 Patents.

17. On information and belief, on or about February 19, 2001, WTI, through its agent and licensee Bio Max Environmental, granted a sublicense to Kuo-Bin Ceramic Ind. Co., Ltd of Taipei, Taiwan, also known as Kobin Environmental Enterprises Co., Ltd. ("Kobin") for the use of WES-PHix® to treat incinerator bottom ash at Kobin's Taipei facility.

18. The use of WES-PHix® phosphoric acid for stabilization of bottom ash caused a strong odor problem and, about 1% of the time, resulted in failure of the Toxicity Characteristic Leaching Procedure (TCLP) standard for lead at the Kobin plant.

19. In or around 2004, TYT (USA) learned that Kobin was searching for an alternative to their WES-PHix Bottom Ash Stabilization System due to odor and TCLP problems. In response, TYT advised Kobin that Forrester-FESI was available to assist. Consequently, Kobin approached Forrester, as inventor of the WTI Bottom Ash WES-PHix® and the '114 and '233 Patents, and asked him to solve certain problems that had occurred when Kobin used WES-PHix® to treat bottom ash. Kobin informed Forrester that neighbors and the Taiwan Environmental Protection Agency in Taipei had complained to Kobin about odor caused by the use of WES-PHix® and also that WES-PHix® had failed to pass the applicable TCLP tests on some occasions.

20. On January 19, 1999, United States Letters Patent No. 5,860,908, entitled "Water insoluble heavy metal stabilization process" ("the '908 Patent"), was issued to Plaintiff Forrester,

for an invention in a method of immobilizing heavy metal in a free flowing dry or wet waste or heavy metal contaminated material which maintains its free flowing nature after immobilizing treatment.  A copy of the '908 Patent is attached hereto as Exhibit 1.  Forrester owned the '908 Patent throughout the period of the Defendant WTI's infringing acts and still owns the patent.  Forrester invented the invention claimed in the '908 Patent after leaving WES and forming FESI.

21. On April 18, 2000, United States Letters Patent No. 6,050,929, entitled "Method for stabilizing heavy metal bearing waste in a waste generation stream" ("the '929 Patent"), was issued to Plaintiff Forrester, for an invention in a method for stabilizing a heavy metal in a heavy metal containing material (including, but not limited to, insulation wire waste and autoshredder waste) to reduce leaching of the heavy metal therefrom when said material is exposed to natural or induced leaching conditions.  A copy of the '929 Patent is attached hereto as Exhibit 2.  Forrester owned the '929 Patent throughout the period of the Defendant WTI's infringing acts and still owns the patent.  Forrester invented the invention claimed in the '929 Patent after leaving WES and forming FESI.

22. On August 12, 2005, Forrester filed a Taiwan patent application, entitled "Method for Stabilization of Slag, Matte and Bottom Ash," which incorporates and teaches the use of calcium phosphates, monocalcium phosphates, dicalcium phosphates, granular triple superphosphate ("GTSP") and tricalcium phosphates as TCLP Pb stabilizers for incinerator bottom ash.  The application was assigned Application No. 094127495, and was published in the Taiwan Patent Office on or about June 1, 2006, Publication No. 200616722.

23. On August 28, 2007, Forrester filed a Taiwan patent application, entitled "Method for Stabilization of Heavy Metals and Odor Control with Dicalcium Phosphate Dihydrate Powder," which incorporates and teaches the use of DCPDHP as a TCLP Pb and odor control

agent for Kobin incinerator bottom ash. The application was assigned Application No. 096131793, and was published in the Taiwan Patent Office on or about January 1, 2009, Publication No. 200900170.

24. FESI sells chemicals and provides stabilization processes that were patented under the '908 and '929 Patents under the name "FESI BOND® DRY."

25. When he was approached by Kobin, Forrester offered to develop a chemical covered by his '908 and '929 Patents and/or develop a new BA stabilization technology that would solve the problems with WES-PHix® that had been identified by Kobin.

26. On August 27, 2004, FESI entered into a "Stabilization Chemical Supply Agreement" ("Agreement") with Kobin to provide FESI-BOND® DRY stabilization chemicals for the purpose of stabilizing incinerator bottom ash. As part of the Agreement Appendix, FESI disclosed to Kobin the use of water insoluble dry stabilizers including calcium phosphate, monocalcium phosphate, GTSP, dicalcium phosphate and tricalcium phosphate.

27. Taiwan is the only country in the world that permits separate stabilization and commercial product reuse of incinerator bottom ash.

28. FESI's Agreement with Kobin includes all bottom ash stabilization projects in Taiwan including the Kobin facility, where bottom ash is separated from incinerator flyash, and where bottom ash requires stabilization prior to reuse as construction aggregate.

29. In 2004 and 2005, as the result of pioneer research at FESI LABS in order to produce a dry stabilizer capable of stabilizing Bottom Ash TCLP Pb while reducing odor as compared to WES-PHix® phosphoric acid stabilization, Forrester invented a chemical called FESI-BOND® DCPDHP employing dicalcium phosphate dihydrate powder specifically

engineered for use by Kobin at its Taiwan facility, and located and modified a source for said chemical in Shanghai, China.

30. Kobin constitutes the entire market for FESI-BOND® DCPDHP.

31. On information and belief, WTI gained actual knowledge of the Agreement and of FESI's contractual relations with Kobin in or around 2005.

32. FESI-BOND® DRY stabilization chemicals includes but is not limited to calcium phosphate, monocalcium phosphate, dicalcium phosphate, tricalcium phosphate, GTSP and dicalcium phosphate dihydrate in powder form. DCPDHP is water insoluble and is applied in a dry treatment process.

33. FESI-BOND® DRY water insoluble chemicals, including calcium phosphate, monocalcium phosphate, dicalcium phosphate, tricalcium phosphate, GTSP and/or FESI-BOND® DCPDHP, are not covered by any of WTI's patents and are not included in WTI's WES-PHix® system.

34. The Taiwan Environmental Protection Agency approved the use of FESI-BOND® DCPDHP by Kobin for Bottom Ash TCLP stabilization with low stabilization process generated odor production in 2005.

35. Kobin commenced purchases of FESI-BOND® DCPDHP from FESI on or about April 29, 2005, and made regular purchases thereafter in the amount of approximately $60,000 per month.

36. In or around June, 2007, WTI approached Kobin and knowingly and intentionally made false statements to Kobin regarding Forrester, Forrester patents pending and FESI and regarding WTI's own patents and products, including (a) statements guaranteeing that calcium phosphate, monocalcium phosphate, dicalcium phosphate, tricalcium phosphate, GTSP and

DCPDHP were covered by WTI's patents, including the '114 Patent, and were within the WES-PHix® process; (b) statements that FESI had been sued by WTI in the United States and had lost the suit; and (c) written statements that Forrester had no rights to calcium phosphate use as a TCLP Pb stabilizer in Taiwan.

37. WTI made such false statements to Kobin as part of the promotion of its own business for the purpose of interfering with FESI's and Forrester's actual and prospective contractual relations with Kobin and causing Kobin to breach the Agreement with FESI and not to make royalty payments to Forrester.

38. On information and belief, WTI's decision to make such false statements and to interfere with FESI's Agreement with Kobin and Forrester's right to royalties from Kobin was made at WTI's corporate headquarters in New Hampshire.

39. In or around June, 2007, WTI explicitly required Kobin to terminate the FESI-Kobin Agreement and also required Kobin to stop all purchases and sales of FESI-BOND in Taiwan, as part of the terms and conditions of a new Kobin 2007 WES-PHix license agreement.

40. In or around June, 2007, in reliance on and by reason of WTI's requirements and false statements as above alleged, Kobin terminated the Agreement between Kobin and FESI, elected not to pay Forrester any royalty for the calcium phosphate, monocalcium phosphate, dicalcium phosphate, tricalcium phosphate, GTSP and/or DCPDHP stabilization and odor control agent invention, and entered into a new WES-PHix® license agreement with WTI ("Second WTI Agreement").

41. On information and belief, during negotiation of the Second WTI Agreement, Kobin asked WTI if WES-PHix® covered the use of dry water insoluble phosphate chemicals, and WTI falsely stated that it has a patent covering the use of "any solid, liquid or chemical form

of phosphate and/or lime" including the use of dry chemicals. On information and belief, WTI made such false statements to Kobin as part of the promotion of its own business for the purpose of interfering with FESI's actual and prospective contractual relations with FESI. On information and belief, WTI's decision to make such false statements and to interfere with FESI's contract with Kobin was made at WTI's corporate headquarters in New Hampshire.

42. In or about June or July, 2007, FESI and Kobin planned to meet in Meredith, New Hampshire, for the purpose of signing a new FESI/Kobin agreement for future supply of DCPDHP to Kobin and for royalty payments to Forrester. In or about June, 2007, prior to the anticipated meeting with FESI, Kobin met with WTI in Hampton, New Hampshire. Upon information and belief, at said meeting, WTI stated to Kobin that WTI patents and WES PHix® technology covered DCPDHP provided to Kobin by FESI and the Forrester invention, and that FESI had lost a lawsuit against WTI. Thereafter, Kobin cancelled its planned meeting with FESI in New Hampshire.

43. The Second WTI Agreement falsely states that WES-PHix® patents cover "using any solid, liquid, or chemical form of phosphate and/or lime" for immobilization of metals such as lead and cadmium in solid residues.

44. Kobin terminated its business with FESI by reason of WTI's false statements and representations as above alleged and by reason of WTI's explicit requirements that FESI-Kobin Agreement be terminated and that Kobin stop all purchases and sales of FESI-BOND in Taiwan.

45. Said termination has caused, and continues to cause, both loss of revenue and irreparable harm to FESI and Forrester.

46. On information and belief, Kobin is directly purchasing calcium phosphate, monocalcium phosphate, dicalcium phosphate, tricalcium phosphate, GTSP and/or DCPDHP

from sources other than FESI, and is paying WTI or its agent royalties of approximately $1.5 million annually in connection with Kobin's purchases of calcium phosphate, monocalcium phosphate, dicalcium phosphate, tricalcium phosphate, <u>GTSP,</u> and/or DCPDHP pursuant to the Second WTI Agreement; and Kobin has paid WTI or its agents royalties of approximately $1.5 million annually in connection with Kobin's purchases of DCPDHP from FESI from April 29, 2005 to December 31, 2008, on the claims by WTI that DCPDHP was covered under WTI's patents.

47. On information and belief, WTI deliberately, willfully and intentionally made literally false statements to Kobin that: (a) calcium phosphate, monocalcium phosphate, dicalcium phosphate, tricalcium phosphate, GTSP and DCPDHP were covered by WTI's patents, including the '114 Patent, and were within the WES-PHix® process; and (b) WTI has a patent covering the use of "any solid, liquid or chemical form of phosphate and/or lime" including the use of dry chemicals.

48. On information and belief, WTI has deliberately, willfully and intentionally made literally false statements in the United States, in the course of its regular business, that: (a) calcium phosphate, monocalcium phosphate, dicalcium phosphate, tricalcium phosphate, GTSP and DCPDHP were covered by WTI's patents, including the '114 Patent, and were within the WES-PHix® process; and (b) WTI has a patent covering the use of "any solid, liquid or chemical form of phosphate and/or lime" including the use of dry chemicals.

49. On information and belief, whether calcium phosphate, monocalcium phosphate, dicalcium phosphate, tricalcium phosphate, GTSP and DCPDHP were covered by WTI's patents, including the '114 Patent, and were within the WES-PHix® process, and whether WTI has a patent covering the use of "any solid, liquid or chemical form of phosphate and/or lime"

including the use of dry chemicals, all were material to Kobin's decision to breach the Agreement with FESI and Forrester and enter into the Second WTI Agreement with WTI.

50. On information and belief, whether calcium phosphate, monocalcium phosphate, dicalcium phosphate, tricalcium phosphate, GTSP and DCPDHP are covered by WTI's patents, including the '114 Patent, and are within the WES-PHix® process, and whether WTI has a patent covering the use of "any solid, liquid or chemical form of phosphate and/or lime" including the use of dry chemicals, all are material to a relevant consumer's decision to purchase a system or technology for immobilizing heavy metals in waste.

51. On information and belief, relevant consumers have been or deceived or are likely to be deceived by WTI's deliberate, willful and intentional false statements concerning whether: (a) calcium phosphate, monocalcium phosphate, dicalcium phosphate, tricalcium phosphate, GTSP and DCPDHP are covered by WTI's patents, including the '114 Patent, and are within the WES-PHix® process; and (b) WTI has a patent covering the use of "any solid, liquid or chemical form of phosphate and/or lime" including the use of dry chemicals.

## COUNT I
## VIOLATION OF N.H. RSA 358-A

52. Plaintiffs repeat and re-allege the allegations se forth in Paragraphs 1-50 of this Petition, as though fully set forth herein.

53. This claim arises under the Laws of the State of New Hampshire, RSA 358-A:2.

54. WTI is engaged in trade and commerce within the meaning of RSA 358-A:1.

55. The actions of WTI as above alleged constitute unfair methods of competition or unfair or deceptive acts or practices in violation of RSA 358-A:2.

56. Said acts or practices of WTI constitute a willful or knowing violation of RSA 358-A.

57. As a result of the actions of WTI as above alleged, Plaintiffs have suffered damages.

## COUNT II
## TORTIOUS INTERFERENCE WITH CONTRACUAL RELATIONSHIP

58. Plaintiffs repeat and re-allege the allegations se forth in Paragraphs 1-50 of this Petition, as though fully set forth herein.

59. This claim arises under the common law of the State of New Hampshire.

60. FESI had a contractual relationship with Kobin.

61. WTI had actual knowledge of FESI's contractual relationship with Kobin.

62. By its acts as above alleged, WTI intentionally and wrongfully interfered with FESI's contractual relationship with Kobin and Forrester's prospective royalty license with Kobin.

63. The conduct of WTI as above alleged is the result of an improper motive on behalf of WTI.

64. By its acts as above alleged, WTI tortiously interfered with the business relationship between FESI and Kobin and Forrester and Kobin.

65. As a result of the actions of WTI as above alleged, FESI and Forrester have suffered damages.

## COUNT III
## TORTIOUS INTERFERENCE WITH FESI'S AND FORRESTER'S PROSPECTIVE ADVANTAGE

66. Plaintiffs repeat and re-allege the allegations se forth in Paragraphs 1-50 of this Petition, as though fully set forth herein.

67. This claim arises under the common law of the State of New Hampshire.

68. FESI and Forrester possessed a business relationship or expectancy with Kobin, with a reasonable probability of future economic benefit.

69. WTI had actual knowledge of FESI's and Forrester's business relationship with Kobin and of FESI's and Forrester's expectancy of future economic benefit.

70. Except for the conduct of WTI as above alleged, FESI and Forrester would have continued their business relationship and entered into an expanded business relationship with Kobin.

71. WTI intentionally interfered with FESI's and Forrester's prospective economic relationship with Kobin.

72. WTI, without privilege to do so, induced or otherwise purposely caused Kobin not to enter into or continue a business relation with FESI and Forrester.

73. FESI has suffered and continues to suffer economic damage as a result of WTI's wrongful interference.

**COUNT IV**
**VIOLATION OF THE NEW HAMPSHIRE UNIFORM TRADE SECRETS ACT**

74. Plaintiffs repeat and re-allege the allegations se forth in Paragraphs 1-50 of this Petition, as though fully set forth herein.

75. This claim arises under law of the State of New Hampshire, including the New Hampshire Uniform Trade Secrets Act, N.H. Rev. Stat. §350-B.

76.     On May 12, 2009, United States Letters Patent No. 7,530,939, entitled "Method for Stabilization of Heavy Metals in Incinerator Bottom Ash and Odor Control with DiCalcium Phosphate Dihydrate Powder" ("the '939 Patent"), were issued to Plaintiff Forrester, for an invention in a method for reducing the leaching of lead and odor from a lead bearing waste. The '939 Patent incorporates and teaches the use of DCPDHP as a TCLP Pb and odor control agent explicitly for the Kobin incinerator bottom ash. A copy of the '939 Patent is attached hereto as Exhibit 3. Forrester owned the '939 Patent throughout the period of the Defendant WTI's infringing acts and still owns the patent.

77.     Prior to the issuance of the '939 patent, the processes which are subject to the patent were disclosed by Forrester and FESI to Kobin and a related party pursuant to confidentiality agreements.

78.     Prior to the publication of the patent application that issued as the '939 patent, the processes which are subject to that patent derived both actual and potential independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who could obtain economic value from their disclosure or use, including WTI, and were the subject of efforts that were reasonable under the circumstances to maintain their secrecy, including but not limited to disclosing the processes to Kobin and a related party only pursuant to confidentiality agreements.

79.     Pursuant to the confidentiality agreements referenced in Paragraph 78 above, Forester and FESI also disclosed to Kobin and a related party information about additional processes (the "Additional Process") which to date have never been disclosed by Forrester or FESI in any patent or otherwise made public.

80.     The Additional Processes derive both actual and potential independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who could obtain economic value from their disclosure or use, including WTI, and at all times have been and continue to be the subject of efforts that were and continue to be reasonable under the circumstances to maintain their secrecy, including but not limited to disclosing the processes to Kobin and a related party only pursuant to confidentiality agreements.

81.     On information and belief, beginning in or about 2006, WTI has used, including use by sale and/or licensing to Kobin, in Taiwan, a method for reducing the leaching of lead from a lead bearing waste comprising incinerator ash, copper wire shredder residue and shredder fluff consisting of contacting said waste with monocalcium phosphate, dicalcium phosphate, tricalcium phosphate, DCPDHP, GTSP, triple super phosphate or wet-process phosphoric acid, that embodies the inventions of the '939 Patent, and also the Additional Processes.  Essential to the proprietary methods of Forrester and/or FESI which were used, disclosed, sold and/or licensed by WTI are processes explained in the '939 patent and the Additional Processes.  At the time of WTI's said disclosure or use, WTI knew or had reason to know that its knowledge, prior to the publication of the patent application that issued as the '939 patent, of the processes explained in the '939 patent, and at all times its knowledge of the Additional Processes, was derived from or through a person(s) who had utilized improper means to acquire it; or acquired it under circumstances giving rise to a duty to maintain its secrecy or limit its use; or derived from or through a person(s) who owed a duty to Forrester and/or FESI to maintain its secrecy or limit its use.

82.     By its acts as above alleged, WTI violated the NHUTSA.

83. Forrester and FESI have suffered and continue to suffer economic damage as a result of WTI's violation.

## JURY TRIAL DEMAND

84. Pursuant to Rule 8, Rules of the Superior Court for the State of New Hampshire, Plaintiffs hereby demand a trial by jury on all issues set forth herein that are properly triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs FESI and Forrester respectfully request that the Court, upon final hearing of this matter, grant the following relief against defendant WTI:

A. Preliminarily and, after trial, permanently enjoin WTI, its agents, employees and all persons and organizations in privity, or acting in concert therewith, from (1) representing to Kobin or elsewhere that calcium phosphates, monocalcium phosphate, dicalcium phosphate, tricalcium phosphate, granular triplesuper phosphate (GTSP), dicalcium phosphate dihydrate powder (DCPDHP) and other water insoluble phosphates are covered by WTI's patents and included within WTI's WES-PHix® system; (2) selling or receiving royalties by reason of the sale of DCPDHP, monocalcium phosphate, dicalcium phosphate, tricalcium phosphate, or any water insoluble phosphate or triple superphosphate (including, but not limited to, GTSP) to Kobin; and (3) further interfering with the actual and prospective contractual relationships between FESI/Forrester and Kobin;

B. Affirmatively require WTI, its agents, employees and all persons and organizations in privity, or acting in concert therewith, to retract any and all previous false and misleading statements to Kobin as above alleged;

C. Affirmatively require WTI, its agents, employees and all persons and organizations in privity, or acting in concert therewith, to provide corrective advertising, at WTI's cost and expense, conspicuously stating that calcium phosphates, monocalcium phosphate, dicalcium phosphate, tricalcium phosphate, dicalcium phosphate dihydrate powder (DCPDHP), granular triple superphosphate and other water insoluble phosphates are not covered by WTI's patents and are not included within WTI's WES-PHix® system;

D. Award FESI its actual damages incurred as a result of WTI's tortious interference with FESI'S contractual relations;

E. Award FESI its actual damages incurred as a result of WTI's tortious interference with FESI'S prospective advantage;

F. Award FESI treble and/or enhanced damages, attorneys fees and costs, as provided by New Hampshire RSA 358-A:10 and RSA 350-B:3 and 350-B:4;

G. Order WTI to disgorge its profits gained in violation of New Hampshire RSA 358-A:10;

H. Permanently enjoin WTI from unlawful acts pursuant to New Hampshire RSA 358-A:10 and RSA 350-B:2;

I. Award FESI prejudgment and post-judgment interest; and

J. Award to FESI any other relief, in law and in equity, to which the Court finds FESI justly entitled.

Dated: March 10, 2011      Respectfully submitted,

FORRESTER ENVIRONMENTAL SERVICES, INC. and
KEITH E. FORRESTER

By Their Attorneys
GALLAGHER, CALLAHAN & GARTRELL, PC

By:     */s/ Erik G. Moskowitz*
Michael R. Callahan (Bar No. 424)
Erik G. Moskowitz (Bar No. 18961)
214 N. Main Street
Concord, NH 03302-1415
603-228-1181
callahan@gcglaw.com
moskowitz@gcglaw.com

OF COUNSEL:

Sibley P. Reppert
Michael J. Markoff
Pearl Cohen Zedek Latzer LLP
50 Congress Street, Suite 1010
Boston, MA 02109
(617) 228-5725
Fax (646) 878-0801
SibleyR@pczlaw.com
mmarkoff@verizon.net

Clyde Shuman
Pearl Cohen Zedek Latzer LLP
1500 Broadway, 12th Floor
New York, NY 10036
(646) 878-0800
Fax (646) 878-0801
LeeG@pczlaw.com
ClydeS@pczlaw.com