UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                                        :

FORRESTER ENVIRONMENTAL SERVICES,
INC. and KEITH FORRESTER,                       :

                       Plaintiffs,                :      CASE NO. 10-CV-154-JL

     vs.                                             :

WHEELABRATOR TECHNOLOGIES, INC.,    :

                       Defendant            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS DISMISSING
COUNT IV OF PLAINTIFFS' SECOND AMENDED COMPLAINT**

Defendant Wheelabrator Technologies Inc. ("WTI") respectfully submits the following Memorandum of Law in Support of its Motion for Judgment on the Pleadings Dismissing Count IV.

**I.   INTRODUCTION**

This action is the second action that plaintiffs have brought based on the allegation that WTI convinced Kobin (a Taiwanese company which operates a municipal waste combustion ash treatment plant in Taipei, Taiwan) not to do business with plaintiffs but instead to do business with WTI.  Until recently, plaintiffs steadfastly maintained that WTI had made false statements

1

to Kobin at a meeting in New Hampshire in June 2007 in order to win this business.[1]  When plaintiffs brought this second action in February 2010, they included a claim based on the theory that Kobin's use of WTI's methods for treating waste would constitute infringement of several United States patents issued to Forrester if Kobin's practice of the methods had occurred within the United States, but which instead somehow constituted common law "misappropriation" of the technology allegedly disclosed by these patents.  *See* Amended Petition ¶¶ 75-92.  There was never any mention of "trade secrets."   In response to a Motion to Dismiss filed by WTI, however, plaintiffs abandoned this frivolous "patent misappropriation" theory.  Now, however, in a "Second Amended Complaint" filed on March 10, 2011, plaintiffs assert a claim for statutory trade secret misappropriation pursuant to NH RSA 350-B, based on the allegation that:

> On information and belief, beginning in or about 2006, WTI has used, including use by sale and/or licensing to Kobin, in Taiwan, a method for reducing the leaching of lead . . . that embodies the inventions of [a single United States patent issued to Forrester] and also . . . Additional Processes.

*See* Second Amended Complaint ¶ 81.  This new theory avoids the preemption problems and other fatal flaws of the previous "patent misappropriation" cause of action pleaded under New Hampshire common law.  However, the new theory also suffers from fatal flaws such that, as a matter of law, the new cause of action cannot succeed.

First, plaintiffs now (at long last) finally concede that the conduct they complain about occurred "beginning in . . . 2006" (rather than June 2007).  *See* Second Amended Complaint ¶ 81.  The new cause of action does not relate back to the filing of this action in February 2010, but even if it did, it would still be time-barred.  Second, plaintiffs fail to meet the specific

---

[1] Plaintiffs' contentions in this regard are demonstrably false.  For example, and as plaintiffs have known all along, Kobin has been a WTI licensee since 2001 and was obligated to pay royalties to WTI through 2011.  It then entered into a restructured license agreement with WTI in **November 2006,** after several months of negotiation (none of which took place in New Hampshire).  Plaintiffs have tried to ignore these facts, presumably because they know this second lawsuit was filed too late and is time-barred.

requirements for pleading a trade secret claim, which are more rigorous than mere notice pleading. In this regard, although plaintiffs plead that they disclosed an alleged "secret" to Kobin and although they further allege (on information and belief) that WTI "has used" the "secret", they do not plead that WTI used unlawful or improper means to obtain the secret; indeed, their new pleading is completely silent as to the manner in which WTI is supposed to have come into possession of the "secret" which it then allegedly "used." Plaintiffs also do not adequately identify their "trade secret." They assert that their "trade secret" included "processes subject to [a] patent," *i.e.*, processes that were eventually disclosed publicly in a patent issued in the United States in May 2009, and that the "secret" also included something described only as "Additional Processes" (which apparently were *not* "subject to the patent"), but no details whatsoever about these "Additional Processes" is offered.

      WTI, accordingly, now moves for judgment on the pleadings, dismissing Count IV of plaintiffs' Second Amended Complaint, pursuant to Fed. R. Civ. P. 12(c), because it as a matter of law it is time barred and, also, because it fails to state a claim upon which relief can be granted.

## II.    STANDARD OF REVIEW

      Where it is obvious from the pleadings themselves that a claim is time barred, a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is an appropriate method to adjudicate the statute of limitations issue; no purpose would be served by allowing the litigation to proceed on a claim which is doomed to fail. *See Phelps v. McLellan*, 30 F.3d 658, 662 (6th Cir. 1994). Here, plaintiffs plead that statutory trade secret misappropriation occurred "beginning in 2006," so obviously the statute had run by the time the new claim was pleaded on March 10, 2011. Even if plaintiffs' new claim related back to the

filing of this action in February 2010, it would still have been asserted more than three years after the alleged wrongful conduct, and thus it is barred.

A motion for judgment on the pleadings is also appropriate to dispose of pleadings which do not state a claim for relief under applicable law. *See Amersbach v. City of Cleveland*, 598 F.2d 1033 (6th Cir. 1978). In this regard, a Rule 12(c) motion is essentially identical to a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim. *See*, *e.g.*, *Nedder v. Rivier College*, 944 F. Supp. 111 (D.N.H. 1996). Thus in order to avoid dismissal, the complaint must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable theory." *Gooley v. Mobil Oil Corp.*, 951 F.2d 513, 515 (1st Cir. 1988); *see also U.S. v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir. 1992). If the complaint fails to articulate any viable theory of recovery, then it is subject to dismissal. *Gooley*, 951 F.2d at 515. Here, plaintiffs have now attempted to plead a claim under the New Hampshire version of the Uniform Trade Secrets Act, NH RSA 350-B, but they do not meet the rigorous pleading requirements for such a claim. They fail to allege how WTI came into possession of their trade secret, let alone that such possession was unlawful or improper, and under New Hampshire law this is a critical flaw. Equally important, plaintiffs do not identify their "trade secret." They rely instead on vague allegations that their "patent incorporates and teaches the use of DCPDHP as a TCLP Pb and odor control agent explicitly for the Kobin incinerator bottom ash" and that "the processes which are subject to that patent" were a trade secret until the patent was published. However, elsewhere in their pleading plaintiffs allege that Kobin is using various chemicals <u>not</u> with the DCPDHP patent, making it impossible to tell what the "secret" was. Plaintiffs also make an even less specific reference to something called "Additional Processes," about which they provide no information whatsoever.

4

Plaintiffs' latest version of Count IV must accordingly be dismissed because, as a matter of law, it is both time barred and deficient on its face. If, however, plaintiffs were to argue that there are factual issues that the Court should consider beyond the face of the pleadings, then WTI respectfully requests the opportunity for a hearing and/or the opportunity to convert this Motion into a motion for summary judgment. *See* Fed. R. Civ. P. 12(i). In this regard, WTI has already filed a motion for summary judgment on Counts I through III, which is still pending and which could easily be supplemented to include the new statutory claim asserted by plaintiffs.[2]

### III.  ALLEGATIONS IN SUPPORT OF THE NEW COUNT IV

Plaintiffs allege that in 2004 they convinced a Taiwanese entity known as Kobin, the owner of an incinerator residue treatment plant located in Taipei, Taiwan, to stop using WTI's metal stabilization technology pursuant to a 2001 sub-license agreement and, instead, to start using plaintiffs' technology. Second Amended Complaint ¶¶ 17, 19, 25, 26 and 28. They further claim that they agreed to develop "a chemical covered by [plaintiffs'] '908 and '929 Patents [issued in 1999 and 2000, respectively] and/or [to] develop a new [bottom ash stabilization] technology." *Id.* ¶¶ 20, 21, 25, 26.

According to plaintiffs, sometime after this 2004 agreement with Kobin, plaintiffs engaged in "pioneer research" and "invented a chemical called FESI-BOND® DCPDHP employing dicalcium phosphate dehydrate powder specifically engineered for use by Kobin . . .

---

[2] The Court granted plaintiffs leave to amend without giving WTI an opportunity to object. WTI submits that it could have shown that the amendment was futile. For one thing, although plaintiffs continue to refuse to identify the date on which Kobin purportedly breached its agreement with plaintiffs (despite being ordered to do so) and although they also now claim that they did not even know there had been a breach until June 2007, the documentary evidence conclusively establishes that plaintiffs have known all along that the license in question was entered into in 2006. This evidence includes not only a January 19, 2007 letter that plaintiffs wrote to Kobin, but also an email, recently produced by plaintiffs in discovery, by which they reported to the FBI (as part of an unsuccessful and malicious effort to cause the FBI to investigate WTI) that "KOBIN Chinese management reports . . . confirm that **KOBIN terminated an Agreement with [plaintiffs] in 2006** due to the Wheelabrator [conduct]." (Docket Entry 46 at Ex. H.) Plaintiffs also know that when Kobin renegotiated its license arrangements with WTI in 2006 it stopped using plaintiffs' "secrets" and instead returned to the use of WTI's technology, which utilized different chemicals and methods than the so-called "secret" that had been disclosed by plaintiffs. (Docket Entry 36-2, Lyons Decl. ¶ 23.)

and located and modified a source for said chemical in Shanghai China," *id.* ¶ 29, and that Kobin began purchasing this chemical from plaintiffs after it was approved by the Taiwanese Environmental Protection Agency in 2005. *Id.* ¶¶ 34, 35.[3]

Plaintiffs further allege "on information and belief" that WTI gained actual knowledge of [plaintiffs' 2004] Agreement [with Kobin]" in 2005 and that "[i]n or around June, 2007, WTI approached Kobin and knowingly and intentionally made false statements to Kobin" regarding the parties' intellectual property rights with respect to a broad list of chemical products. *Id.* ¶ 36. According to plaintiffs, as a result of these statements in June 2007, Kobin "terminated the Agreement [with plaintiffs] and elected not to pay [plaintiffs] any royalty" for the use of a broad list of chemical products, which includes various chemicals disclosed in various patents, including but not limited to plaintiffs' "DCPDHP stabilization and odor control invention." *Id.* ¶¶ 20-23, 40. Plaintiffs also allege "on information and belief" that "Kobin is directly purchasing [one or more chemicals from this broad list] and paying WTI or its agent royalties." *Id.* ¶ 46.

After setting forth these general allegations, the Second Amended Complaint then attempts to state a claim under the New Hampshire version of the Uniform Trade Secret Act by alleging that plaintiffs were issued a patent on May 12, 2009 "for an invention in a method for reducing the leaching of lead and odor" which "incorporates and teaches the use of DCPDHP . . . explicitly for . . . the Kobin incinerator bottom ash," (¶ 76); that "[p]rior to the issuance of [this] patent, the processes which are subject to the patent were disclosed by [plaintiffs] to Kobin and [an unidentified] related party pursuant to confidentiality agreements," (¶ 77); and that plaintiffs

---

[3] Plaintiffs have failed and refused to produce any documents whatsoever to support their alleged invention or "engineering" of this chemical, their "modification of a source" for the chemical, or the approval of the Taiwanese EPA, making it impossible to test these allegations or to determine the extent to which any of this alleged technology may have been publicly disclosed as part of the Taiwanese regulatory process.

6

also disclosed to Kobin and this unidentified "related party" "information about additional processes . . . which to date have never been [otherwise] disclosed by [plaintiffs]" (¶ 79). Plaintiffs also parrot the language of the UTSA by asserting that they used reasonable efforts to maintain the secrecy of "the processes which are subject to the patent" and of the "additional processes" and that all of this technology derived independent economic value because it was not generally known or readily ascertainable. *Id.* ¶¶ 78, 80.

Plaintiffs do not allege anywhere in the Second Amended Complaint that WTI acquired any specific knowledge about any of "the processes which are subject to the patent" or any of the "additional processes", let alone provide any details about the method by which any such knowledge might have been acquired, by whom, or from whom. Instead, plaintiffs allege only that "[o]n information and belief, beginning in 2006, WTI has used, including by sale and/or licensing to Kobin, in Taiwan, a method for reducing the leaching of lead from . . . incinerator ash [and other types of waste] consisting of contacting said waste with [one of a broad list of chemicals including *but not limited to* DCPDHP] that embodies the invention of the [patent issued to plaintiffs in 2009], and also the [a]dditional [p]rocesses." *Id.* ¶ 81. They also assert that "proprietary methods of [plaintiffs] were used, disclosed, sold and/or licensed by WTI [to Kobin including] processes explained in the [plainitffs'] patent and the [a]dditional [p]rocesses." *Id.*

IV.   **ARGUMENT**

   A.   **Plaintiffs' Statutory Claim Is Time Barred**

Pursuant to N.H. RSA 350-B:6, any claim for misappropriation of a trade secret must be brought "within 3 years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered."

7

Here, plaintiffs plead that the misappropriation occurred "in or about 2006." Amended Complaint ¶ 81. No facts are alleged which suggest that plaintiffs were not aware of the misappropriation as soon as it took place, let alone that they could not have discovered it at the time, so on the face of the Amended Complaint, the only inference to be drawn is that the claim had to have been brought some time before the end of 2009, *i.e.*, before three years had elapsed. Plaintiffs did not file suit until February 2010, however, and the new claim for misappropriation was not filed until March 10, 2011.

A threshold question is whether plaintiffs can avail themselves of the "relation back" doctrine embodied in Fed.R.Civ.P. 15(c)(1)(B), pursuant to which amendments relate back to date of original pleading only if new cause of action arises out of the same conduct, transaction or occurrence set out in the original pleading. The new statutory misappropriation theory alleged by plaintiffs is substantially different from their initial "common law" misappropriation theory. Whereas the original claim was based on allegations that WTI was unfairly profiting by licensing information that had been <u>publicly</u> <u>disclosed</u> in plaintiffs' United States patents, the new theory is that WTI somehow is profiting from information that had been disclosed <u>in</u> <u>confidence</u> only to Kobin and to and unidentified "related party," and which is alleged to constitute a trade secret. *Compare* Amended Petition ¶¶ 70-92 with Second Amended Complaint ¶¶ 76-81. This new theory thus focuses on the actions of Kobin and the unidentified related party, who apparently are accused of violating obligations owed to plaintiffs under "confidentiality agreements" by disclosing secrets to WTI. The new theory also involves a different time period; the statutory trade secret misappropriation is alleged to have occurred "beginning in or about 2006," *see* Second Amended Complaint ¶ 81, whereas the original common law misappropriation claim

8

appeared to be based on a license agreement entered into "[i]n or around June, 2007," *see* Amended Petition ¶ 40.

Given these different and additional factual allegations, and given the completely different legal theory relied upon by plaintiffs, the amendment does not relate back to the original filing date of February 2010 but rather the new filing date of March 10, 2011, which by any stretch is simply too late to avoid the bar of the statute of limitations.

Numerous federal court decisions support the proposition that amendments such as this do not relate back to the original filing date of the action. For example, in *Flagstar Bank, FSB v. Ticor Title Insur. Co.*, 660 F. Supp.3d 346, 352-53 (D.Conn. 2009), the trial court refused to allow an amended claim based on the negligence of the defendant to relate back to the date of filing of the original claim, which alleged the separate negligence of the defendant's agent. The trial court acknowledged the relationship of the new claim to "the general fact situation alleged in the original pleading," but this was not enough to allow relation back. Similarly, in *Louisiana Wholesale Drug Co. v. Biovail Corp.*, 437 F. Supp.2d 79 (D.D.C. 2006) *affirmed* 533 F.3d 857 (D.C. Cir. 2007), a new antitrust claim based on the theory that a manufacturer decided not to manufacture a generic version of a drug did not relate back to an earlier claim that the manufacturer had unlawfully delayed competitors' efforts to win approval for that same drug. Despite the fact that the "new claim is of course factually related to [the] original claim of injury" the necessity of pleading "entirely new" allegations to support the new claim meant that the relation-back test could not be satisfied. 437 F. Supp.2d at 85-87. *See also Holmes v. Greyhound Lines, Inc.*, 757 F.2d 1563, 1566 (5th Cir. 1985) (allegation that union violated its duty to employee of fair representation during grievance process did not relate back to claim that arbitrators had acted improperly in resolving the employee's grievance); *Marine Midland Bank*

9

*v. Keplinger & Assoc., Inc.*, 94 F.R.D. 101 (S.D.N.Y. 1982) (amendments based on conduct between August 1977 and July 1978 would not relate back since original complaint alleged only conduct prior to August 1977); *Illinois Tool Works Inc. v. Foster Grant Co. Inc.*, 395 F. Supp. 234 (N.D.Ill. 1974), *affirmed* 547 F.2d 1300 (7th Cir. 1976), *cert. denied* 431 U.S. 929 (1977) (new allegations of patent infringement did not relate back to claims based on infringement of different patents); *Pendrell v. Chatham College*, 368 F. Supp. 341, (W.D.Pa. 1974) (state law claims for defamation and trespass did not relate back to constitutional claims, even though all claims arose out of a failure to renew an employment contract and were all based on "the same general transaction or series of events"). New Hampshire law is consistent with these federal decisions; while there is liberal policy in New Hampshire in favor of allowing amendments, "the doctrine … is not limitless" and does <u>not</u> favor substantive amendments which introduce "an entirely new cause of action." *Bel Air Assocs. v. New Hampshire Dept. of Health & Human Services*, 154 N.H. 228, 236 (2006). As in all of these cases, what plaintiffs seek to do here is to allege an entirely new statutory cause of action which, while generally related to the common law cause of action in the original pleading, is based on different facts. Therefore, it does not relate back.

When the new cause of action was filed on March 10, 2011, well over four years had elapsed from the occurrences on which it was based, and, more importantly, some four years and two months after plaintiffs indisputably were aware of the conduct in question, making it a stale claim.[4]

But even if the filing of the new statutory trade secret claim *were* found to relate back to the filing of this lawsuit in February 2010, the only fair inference to be drawn from the

---

[4] Plaintiffs have pleaded elsewhere in this case that they did not learn of WTI's conduct until June 2007, but this allegation is false; in fact, plaintiffs' own letter of January 19, 2007 establishes their knowledge of the conduct in question as of January 2007. (Docket Entry 36 at Ex. F to Shirley Decl.)

10

allegations in the Second Amended Complaint, taken as a whole, is that plaintiffs learned of the alleged "sale or license" of plaintiffs' "trade secrets" by WTI at the time it occurred, that is, "beginning in 2006." In this regard, paragraphs 35, 44 and 45 of the Second Amended Complaint allege that the harm which flowed from the "sale or license" by WTI was a decision by Kobin to "stop all purchases" of the chemical which plaintiffs claim was their trade secret. Plaintiffs must have known that what they call "misappropriation" had occurred as soon as Kobin stopped purchasing chemicals from them. (To be sure, paragraphs 35, 44 and 45 are based on the allegation that the sale or license occurred in June 2007, but that is simply false, as plaintiffs now admit in paragraph 81 of the latest pleading.)

WTI further submits that, even if the Court were to conclude that the statute of limitations issue raises questions of fact, it is an issue that can be decided now, before the litigation continues much further and the parties are required to expend even more resources on a case that by all appearances is time barred and thus doomed to fail. Both federal law and New Hampshire law support this approach. *See*, *e.g.*, *Keshishian v. CMC Radiologists*, 142 N.H. 168, 179-80 (1997) ("trial court … is vested with the power to decide a statute of limitations question 'at a preliminary hearing in advance of trial.'")(citations omitted); *Kelleher v. Marvin Lumber and Cedar Co.*, 152 N.H. 813, 825 (2006) ("we caution that it is often most economical and equitable to rule on [statute of limitations issues] at an earlier point in time, 'thereby eliminating the need for a lengthy trial.'")(citations omitted).

To be sure, courts have discretion in deciding how to deal with statute of limitations questions. *Kelleher*, 152 N.H. at 825. Where a plaintiff tries to save a stale claim by taking the position that the discovery rule applies and asserting that it did not learn of the existence of the claim until a point in time less than three years before the claim was filed, the best procedure is

for a trial court to consider the matter as quickly as possible in order to avoid unnecessary judicial proceedings. *Id.* Thus, even if plaintiffs respond to this Motion by attempting to raise factual issues that require an evidentiary hearing regarding, it would be appropriate for the Court to determine the issue as a preliminary matter, rather than waiting for a jury trial. Here, this would seem to be appropriate. (To the extent plaintiffs assert the discovery rule, they will have to explain their January 19, 2007 letter to Kobin, previously submitted in support of WTI's Motion for Summary Judgment, by which they expressed concerns that Kobin had returned to using WES-PHix and that Kobin was purchasing chemicals from local sources rather than from plaintiffs. This letter, even without more, certainly seems to establish that plaintiffs had ample information to put them on notice of a potential misappropriation claim.)

> **B.    Count IV Of The Second Amended Complaint Does Not State a Claim**
>
> 1.    <u>Plaintiffs Do Not Identify Any Conduct Constituting Misappropriation</u>

Under New Hampshire law, it is a critical element of a statutory misappropriation claim that the defendant acquired knowledge of the plaintiffs' alleged trade secret "by breaking a contract or engaging in other unlawful or improper conduct." *See Micro Data Base Systems v. Dharma Systems, Inc.,* 148 F. Supp.2d 649, 657 (6th Cir. 1998) (applying New Hampshire law). Here, the Second Amended Complaint does not contain any such allegations. To be sure, in some places the pleading implies that when WTI negotiated a license agreement with Kobin, WTI may have known something about plaintiffs' alleged secret invention of a new source of phosphate, but in other places the pleading simply alleges that WTI represented to Kobin that WTI owned all intellectual property rights with respect to the use of <u>any</u> type of "calcium phosphate," *see* Second Amended Complaint ¶ 36(c). Similarly, in other places, plaintiffs allege that WTI represented to Kobin that it owned the intellectual property rights to the use of <u>all</u> "dry

12

water insoluble phosphate chemicals." *Id.* ¶ 41.  While these various allegations all touch on WTI's knowledge, the focus of the allegations is WTI's statements to Kobin.  None of the allegations provide any clue as to the manner in which WTI is alleged to have acquired any particular knowledge about any particular "secret process," let alone about any "secret chemical" belonging to the plaintiffs.

The newly-minted allegations in support of the trade secret claim itself (paragraphs 76-81 of the Second Amended Complaint) are even murkier in this regard.  Indeed, plaintiffs do not allege that WTI acquired knowledge of any particular trade secret of the plaintiffs, but only that upon "information and belief" WTI is "using" the alleged trade secret by selling it or licensing it back to Kobin.  *See* Second Amended Complaint ¶ 81.  When read in conjunction with the other allegations in the pleading, it appears that what plaintiffs really are saying is that WTI told Kobin that the 2006 license from WTI included Kobin's continued use of plaintiffs' alleged secret process (which plaintiffs had already disclosed to Kobin); plaintiffs do *not* say that WTI itself possessed any particular knowledge about any particular aspect of those secret processes.  What is more, plaintiffs do not make any allegation whatsoever anywhere in the pleading about the manner in which WTI gained such knowledge, if indeed it had gained any.

The failure to plead that a defendant acquired knowledge of a specific trade secret by some kind of improper means is fatal to a trade secret claim.  *Micro Data Base Systems*, 148 F. Supp.2d at 657; *see Softech Worldwide, LLC v. Internet Technology Broadcasting Corp.,* 2010 WL 4645791 (E.D.Va.) (applying the Virginia version of the UTSA) (plaintiff's failure to allege that defendant had learned about a specific trade secret *with the knowledge* that the disclosure was unauthorized was fatal to the misappropriation claim); *see also Microstrategy, Inc. v. Business Objects, S.A.*, 331 F.Supp.2d 396, 417, 421 (E.D.Va. 2004) (it is not enough to plead

that a defendant possesses a trade secret of the plaintiff because a defendant who acquires a trade secret accidently or without solicitation is not liable for misappropriation unless it subsequently uses the secret with knowledge that it is not entitled to do so).

Plaintiffs' UTSA claim is subject to dismissal for failure to allege that plaintiffs' alleged "trade secret" was disclosed to WTI, failure to allege that WTI knew that disclosure was unauthorized, and failure to allege how or when the "secret" was disclosed, or by whom.

### 2. Plaintiffs Do Not Identify Their Purported Trade Secret

Numerous trade secret cases make it clear that describing the allegedly purloined technology in broad terms is not enough; defendants are entitled to specific notice of what they are claimed to have taken and "what information [plaintiff] seeks to protect." *Fox Sports Net North LLC, v. Minnesota Twins Partnership,* 319 F.3d 329, 335 (8th Cir. 2003).  Thus, in *IDX Systems Corporation v. Epic Systems Corporation*, 285 F.3d 581 (7th Cir. 2002), the Court of Appeals rejected as too vague a trade secret claim based on a "43-page description of the methods and processes underlying and the interrelationships among various features making up [a] software package," explaining that it was not the function of courts to determine which pieces of the information contained within this "complete documentation" actually constituted trade secrets within the meaning of the UTSA.  285 F.3d at 583-84.

Here, plaintiffs have not identified their alleged "trade secret" except in a vague, ambiguous and confusing manner that refers to an entire patent, as well as to other technology embodied in other patents, and to something called "additional processes."  They allege, first, that they had disclosed *to Kobin and "a related party"* the use of "processes covered by" a specific patent (the '839 Patent) which they have described as "incorporate[ing] and teach[ing] the use of" a single specific chemical, DCPDHP.  *See* Second Amended Complaint ¶ 77.  A

14

review of the '839 Patent, which is incorporated as Exhibit 3 to the Second Amended Complaint, contains 8 claims.  All of the claims appear to suggest that the core of the alleged invention is the use of "pulverized or fine particle DCPDHP" (referred to as "acid semi-soluble DiCalcium Phosphate DiHydrate" in the Abstract).  The Summary of the Invention then sets forth descriptions of various processes, regulations and "regulatory extract procedures," all of which makes it impossible to know exactly where within the '839 Patent lies any particular trade secret.  To make matters even more confusing, plaintiffs then allege that the "misappropriation" upon which their statutory trade secret claim is based – WTI's "use and/or sale" of technology to Kobin "beginning in 2006" – was NOT a method limited to the "DCPDHP" technology which appears to be the exclusive subject of the '839 Patent.  To the contrary, plaintiffs allege that the method licensed by WTI to Kobin in 2006 involved the use of "monocalcium phosphate, dicalcium phosphate, tricalcium phosphate, DCPDHP, GTSP, triple super phosphate **or** wet-process phosphoric acid."  *See* Second Amended Complaint ¶ 81 (emphasis added).  Even a perfunctory reading of the '839 Patent reveals that it does not contain any claims regarding the use of any phosphate chemicals other than DCPDHP. The nature of the "secret process" that allegedly was not disclosed to the public until the issuance of the plaintiffs' patent thus remains a complete mystery.  Because the allegations of paragraph 81 of the Second Amended Complaint list so many different phosphate sources, in addition to the DCPDHP processes that were eventually disclosed in the '839 Patent, paragraph 81 directly contradicts the allegations of paragraph 77 of the Second Amended Complaint, which imply that only DCPDHP was a trade secret.  Moreover, if the WTI license included numerous dry sources of phosphate as alleged, then there can be no trade secret because those other sources were disclosed in other patents, two of which are incorporated as Exhibits 1 and 2 to the Second Amended Complaint.  These two

patents were issued well before the alleged "misappropriation" began in 2006. Since various sources of phosphate were disclosed by these earlier patents (with the possible exception of "DCPDHP")[5] they cannot have been "trade secrets" in 2006.

Plaintiffs then make matters even more ambiguous by alleging that they disclosed "additional processes," to Kobin without saying anything more whatsoever about those processes, *id.* ¶ 79, leaving both the Court and WTI entirely in the dark about what they are talking about. This is obviously insufficient to state a claim. *See, e.g., Knights Armament Co. v. Optical Systems Technology*, 568 F. Supp.2d 1369, 1377 (M.D. Fl. 2008) (dismissing as insufficiently specific a trade secret claim based on allegations that defendant had access to plaintiff's trade secrets regarding "night vision technology"). *See also Microstrategy, Inc. v. Business Objects, S.A.*, 331 F. Supp.2d 396, 420-21 (E.D.Va. 2004) (explaining plaintiff's burden to demonstrate each of the particular pieces of information that it claims are trade secrets). Even assuming the allegations of the Second Amended Complaint <u>were</u> specific enough with respect to the allegations regarding "DCPDHP" in paragraph 77 and that those allegations were not rendered meaningless by the more expansive list of phosphate chemicals contained in paragraph 81, plaintiffs cannot be allowed to plead that "additional processes" are also included in the alleged "trade secret" without providing any clue whatsoever about these processes (let alone when they were acquired by WTI).

---

[5] WTI has sworn that it did not know about a chemical called "DCPDHP" until plaintiffs mentioned this chemical in their complaint in the first lawsuit, filed on December 14, 2007. This sworn statement is unrebutted. Had WTI been given an opportunity to object to the motion to amend, it would have pointed out the futility of allowing plaintiffs to assert any claim based on the misappropriation of "DCPDHP" because WTI did not know of this chemical until plaintiffs sued WTI, more than a year after it is alleged to have licensed it to Kobin. The evidence is also irrefutable that once Kobin started using WES-PHix again in 2006, it decided on its own to use triple super phosphate, a source of phosphate identified by Forrester himself in 1992 while employed at WTI's predecessor and one which WTI's licensees have used since 1994. (Docket Entry 36-2, Lyons Decl. ¶¶ 7-10, 23.) All of these facts are known to plaintiffs, who persist in making contrary allegations even though they know they cannot possibly prove them.

It is no answer to suggest that WTI should obtain more specific details through discovery. As the Court is aware from WTI's pending Motion for Discovery Sanctions, all such efforts have been futile, resulting only in more ambiguous and inconsistent assertions. Indeed, to date plaintiffs have not produced <u>any</u> documents (such as manuals, for example) that might reveal what they disclosed "to Kobin and a related party pursuant to confidentiality agreements," <u>any</u> documents regarding the alleged approval of plaintiffs' secret processes by the Taiwanese Environmental Protection Agency (*see* Second Amended Complaint ¶ 34), or <u>any</u> documents showing what "secret information," if any, was acquired by WTI or how, when or from whom it was acquired.

In short, the allegations offered by plaintiffs to support the new trade secret claim simply are too incomplete, too ambiguous and too vague to state a claim. Moreover, plaintiffs have not only contradicted themselves but have made it impossible to obtain any clarification of their position by refusing to comply with their discretionary obligations. The new cause of action for statutory trade secret misappropriation must therefore be dismissed.

## V.     CONCLUSION

For the foregoing reasons, Count IV of plaintiffs' Second Amended Complaint should be dismissed in its entirety.

Respectfully submitted,

**WHEELABRATOR TECHNOLOGIES INC.**

By its attorneys,

**DEVINE, MILLIMET & BRANCH,
PROFESSIONAL ASSOCIATION**

Dated: March 29, 2011

By: /s/ Steven E. Grill
Steven E. Grill (Bar No. 7896)
Jonathan M. Shirley (Bar No. 16494)
111 Amherst Street
Manchester, New Hampshire 03101
Telephone: 603.669.1000
Facsimile: 603.669.8547
sgrill@devinemillimet.com
jshirley@devinemillimet.com

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing Memorandum of Law in Support of Defendant's Motion to Dismiss Count IV is being filed in accordance with the Court's Electronic Case Filing system, and will be served in accordance with that system upon counsel for Plaintiffs.

Dated: March 29, 2011 /s/ Steven E. Grill
Steven E. Grill